No. 18-30163

# In the United States Court of Appeals for the Ninth Circuit

———————

UNITED STATES OF AMERICA,
Plaintiff-Appellant

v.

JASON WILLIAM CATHCART,
Defendant-Appellee

———————

On Appeal from the United States District Court
for the Eastern District of Washington
No. 1:16-cr-2044-SAB

———————

**OPENING BRIEF OF THE UNITED STATES**

███████████████

———————

JOSEPH H. HARRINGTON
United States Attorney

IAN L. GARRIQUES
MEGHAN M. MCCALLA
Assistant United States Attorneys
Eastern District of Washington

BRIAN A. BENCZKOWSKI
Assistant Attorney General

MATTHEW A. MINER
Deputy Assistant Attorney General

DAVID M. LIEBERMAN
Attorney
Criminal Division, Appellate Section
U.S. Department of Justice
950 Pennsylvania Ave., N.W.
Washington, DC 20530
(202) 262-6805
david.lieberman@usdoj.gov

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ......................................................................... iii

JURISDICTIONAL STATEMENT .............................................................. 1

ISSUES PRESENTED .................................................................................. 1

STATEMENT OF THE CASE ...................................................................... 1

I.    Law enforcement arrested Cathcart on molestation charges .................. 2

II.   Cathcart's wife asked police to remove computers from her home ......... 3

III.  A warrant-authorized search found child pornography on Cathcart's computer ............................................................................................. 6

IV.   The district court concluded that the warrant affidavit did not establish probable cause and granted Cathcart's suppression motion ................... 7

SUMMARY OF ARGUMENT ..................................................................... 9

STANDARD OF REVIEW ........................................................................ 10

ARGUMENT ............................................................................................ 11

I.    Probable cause supported the state-court judge's decision to issue the search warrant ................................................................................... 11

      A.    This Court affords substantial deference to the state judge's conclusion that child pornography would likely be found on Cathcart's computers ............................................................ 11

      B.    The warrant affidavit articulated ample facts, beyond Cathcart's molestation offense, supporting the inference that Cathcart possessed child pornography on his computers ......................... 13

      C.    The district court's contrary holding was error .......................... 15

i

II.  Even if probable cause was lacking, the officers acted in good
     faith ............................................................................................. 17

CONCLUSION........................................................................................ 19

BAIL / DETENTION STATUS .............................................................. 20

STATEMENT OF RELATED CASES .................................................... 20

CERTIFICATE OF COMPLIANCE ........................................................ 21

CERTIFICATE OF SERVICE ................................................................ 22

## TABLE OF AUTHORITIES

### Cases

*District of Columbia v. Wesby*, 138 S. Ct. 577 (2018) ........................................ 17

*Dougherty v. City of Covina*, 654 F.3d 892 (9th Cir. 2011) ...............14, 15, 17, 20

*Illinois v. Gates,* 462 U.S. 213 (1983) ........................................................... 13

*United States v. Cotterman*, 709 F.3d 952 (9th Cir. 2013)................................. 16

*United States v. Crews*, 502 F.3d 1130 (9th Cir. 2007) ......................... 12, 19, 20

*United States v. Fernandez,* 388 F.3d 1199 (9th Cir. 2004) ............................... 13

*United States v. Kelley*, 482 F.3d 1047 (9th Cir. 2007)................................13, 14

*United States v. Kleinman*, 880 F.3d 1020 (9th Cir. 2017)............................... 12

*United States v. Leon*, 468 U.S. 897 (1984) ................................................... 19

*United States v. Needham*, 718 F.3d 1190 (9th Cir. 2013) ...............10, 14, 17, 20

### Statutes, Rules, and Other Authorities

18 U.S.C. § 2251 .......................................................................................... 1

18 U.S.C. § 2252A ........................................................................................ 1

18 U.S.C. § 3231 .......................................................................................... 1

18 U.S.C. § 3731 .......................................................................................... 1

## JURISDICTIONAL STATEMENT

The government charged Defendant-Appellee Jason William Cathcart with two counts of producing child pornography, in violation of 18 U.S.C. § 2251(a), and one count of possessing child pornography, in violation of 18 U.S.C. § 2252A(a)(5)(B). ER 1-3. The district court, which had jurisdiction under 18 U.S.C. § 3231, granted Cathcart's motion to suppress on July 5, 2018. ER 96-111. The government filed a timely notice of appeal on July 17, 2018, invoking this Court's jurisdiction under 18 U.S.C. § 3731. ER 6.

## ISSUES PRESENTED

1. Whether, considering a totality of the circumstances, the warrant affidavit articulated probable cause for the search of a computer owned by Cathcart.

2. Whether the officers acted in good-faith reliance on the warrant authorizing the search.

## STATEMENT OF THE CASE

This case arose from law enforcement's investigation of Cathcart for molesting ████████████████████ As part of that investigation, officers obtained a search warrant for Cathcart's password-encrypted computer and discovered child pornography, ████████████████████████████ ███████. The district court ordered those images suppressed.

1

## I.   Law enforcement arrested Cathcart on molestation charges.

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

███████████████████████

████████████████████████████████████████

███████████████████████   ████████████████████████████

████████████████████████████████   Amanda then spoke with Selah Police

Department officers ████████████████████████████████, informing

them that she ██████████████████████████████ did not think that

Cathcart viewed any type of pornography.  ER 97-98.

   That evening, Cathcart turned himself in to the Selah Police Department,

waived his *Miranda* rights, and agreed to an interview.   ER 14.   ████████

████████████████████████████████████████████

████████████████████████████████████████████

---

[1] Citations refer to the search-warrant affidavit unless otherwise noted.

████████████████████████ When questioned about child pornography, Cathcart responded that he did not have inappropriate pictures on his laptop or desktop computer. ER 98 (district court op.). When asked whether he had ever "looked at any type of porn with … males, females, children," Cathcart responded "I've seen it. I mean I can't help it. … I don't actively try to view it." ER 14 (citation omitted).

## II.    Cathcart's wife asked police to remove computers from her home.

While in custody, Cathcart called his wife Amanda and made arrangements to retrieve his laptop computer, iPhone, and iPad. ER 17-18. On one call, Cathcart informed Amanda that he wanted his iPhone once he got out of jail. "His wife t[old] him that the iPhone was seized by police. Cathcart t[old] his wife 'Please call the officer and explain that the phone doesn't have the pictures on it anymore. The phone doesn't have the pictures on it anymore. They're on your phone.'" ER 18.

On April 5, 2016, Selah Police Detective Richard Brumley received a call from Amanda reporting that Cathcart had posted bail by taking money from their joint checking account. ER 15. Amanda informed Officer Brumley that Cathcart had requested his work laptop and iPad earlier in the week, and that Amanda's father had taken the devices to the police station for Cathcart to retrieve. *Ibid*. During this call, Amanda also stated that Cathcart had called to

3

request "some additional computers and external media storage devices from the house." *Ibid.* Expressing concern that the devices might contain child pornography, Amanda asked Officer Brumley "to come to her house and collect all of the computers and external media storage devices." *Ibid.*

"That day, Officer Brumley applied for and received a warrant to seize any electronic storage media, computers, or other electronic computing devices located at [Cathcart's] residence." ER 99 (district court op.). He "seized the items identified in the warrant, but did not serve the warrant because consent to search and seize was given by [Amanda]." *Ibid.*; *see also* ER 29-30 (signed consent-to-search forms).

While Officer Brumley was at the residence, Amanda stated that Cathcart had called earlier that day "ask[ing] her to turn on the home computer tower so that he could remotely access [it]." ER 16. Officer Brumley then asked Amanda "if there was a specific room or place in the house where her husband would use a computer in private. She said that [Cathcart] often took his laptop computer with him to the bathroom." *Ibid.* She also provided Officer Brumley with two known email addresses for Cathcart and the name of a web domain that he owned. *Ibid.*

Officer Brumley's search of the residence uncovered "several electronic media storage devices, including thumb drives, memory storage cards, external

4

hard drives, and a digital video camera." ER 99 (district court op.). He found these items in an upstairs room that Amanda "identified as the office." ER 16. One of the hard drives was "labeled in hand written ink 'Photos A' and another one was labeled 'Photos B.'" *Ibid*. Amanda remarked at the time that she and her husband did not "take that many photographs." *Ibid*.

Amanda also directed Officer Brumley downstairs where he seized "the main computer tower in the house."[2] ER 16. The computer tower was connected to a television, external speakers, a keyboard, a drum set, and various game controllers. *Ibid*. "This [wa]s the computer that [Amanda] said her husband had earlier requested that she turn on so he could remotely access it." *Ibid*. Officer Brumley "noted that the machine appeared to connect to the house Wi-Fi via a wireless connection." *Ibid*.

Officer Brumley transported the seized items to the police department and secured them. A preliminary search of the devices, performed without the aid of forensic tools, did not uncover child pornography. ER 16. Officer Brumley also contacted the National Center for Missing and Exploited Children and requested information on whether Cathcart's digital information could be linked to child pornography. The search came back negative. ER 18.

---

[2] The "Lian Li" computer tower was a single computer device connected to three separate hard drives. ER 35.

### III. A warrant-authorized search found child pornography on Cathcart's computer.

A state-court judge approved a warrant authorizing a search of the seized computer devices. ER 28-27. The warrant affidavit detailed the full course of the investigation:

- ███████████████████████████████████████

- Cathcart's admissions of child molestation to police. ER 14-15.

- Officer Brumley's observations when seizing computer items from the Cathcart home at Amanda's request. ER 15-16. The affidavit specifically reported that Cathcart had called Amanda, asking her to turn on the home computer tower so he could remotely access it. ER 16. The affidavit also reported Amanda's comment, upon seeing hard drives labeled "Photos A" and "Photos B," that "they don't take that many photographs." *Ibid*.

- Cathcart's habit of taking his laptop into the bathroom. ER 16.

- Information from recorded jail calls in which Cathcart made arrangements with Amanda to collect his computer devices. ER 17-18.

- Information about the capability of forensic examiners to locate files and other identifying information that a preliminary search will not normally uncover. ER 19-20.

- Information about Cathcart's high level of technical aptitude that would allow him to distribute and conceal child pornography without leaving a digital footprint. ER 22-23.

The affidavit further stated that based on his training and experience, the affiant (Officer Brumley) found it "likely that Cathcart has previously viewed, collected, stored and/or distributed child pornography." ER 21.

**IV.    The district court concluded that the warrant affidavit did not establish probable cause and granted Cathcart's suppression motion.**

During the search of the computer tower, examiners recovered images of

██████████████████████████████████████████████████████

████  ER 100.  The computer tower also contained child pornography involving

other minors.  *Ibid*.  After the government charged Cathcart with producing and

possessing child pornography, he moved to suppress the images.  Cathcart

argued that Amanda lacked actual or apparent authority to consent to a search

of the computer, and that the search warrant was not supported by probable

cause.

The district court granted the motion.  ER 96-11.  The court held that law

enforcement's initial seizure of the computer tower was valid because Officer

Brumely had obtained Amanda's consent.  *See* ER 104 ("As a co-occupant,

[Amanda] had legal authority to consent to the search of her and [Cathcart's]

shared residence and the seizure of the computer therein.").   The court

concluded, however, that Amanda lacked authority to consent to a search of the

computer tower, finding that she lacked mutual use of or joint access to

Cathcart's personal files stored on that password-encrypted device.  ER 104-105.

The district court then determined that the warrant authorizing the

computer search was unsupported by probable cause.  ER 105-110.  It held that

7

the warrant affidavit erroneously relied on "[t]he bare inference that those who molest children are likely to possess child pornography," which "is insufficient to establish probable cause to search for evidence of the crimes alleged in the indictment." ER 109-110 (quoting *United States v. Needham*, 718 F.3d 1190, 1195 (9th Cir. 2013)).

Finally, the district court held that the good-faith exception to the exclusionary rule did not apply because the officers who searched the computer "relied on a warrant predicated on the bare inference that those who molest children often possess child pornography," despite "clearly established law in the Ninth Circuit that this inference alone does not establish probable cause." ER 110.

8

# SUMMARY OF ARGUMENT[3]

The warrant affidavit articulated sufficient facts that, in their totality, demonstrated a fair probability that Cathcart had stored child pornography on his computer devices. ████████████████████████████████ ████████████████████████████ Cathcart then offered a cryptic answer ("There shouldn't be") to Amanda's question regarding improper materials on their home computers. Later, while in custody, Cathcart repeatedly contacted Amanda in an effort to obtain his computer devices and gain remote access to the main computer tower at their home—conduct consistent with a desire to access and delete child-pornography files. Finally, law enforcement located two hard drives at the Cathcart home labeled "Photos A" and "Photos B"—a suspicious discovery given Amanda's report that the family did not take many photographs.

Combine these facts with Cathcart's penchant for using his laptop in the bathroom and his sophisticated knowledge of computers, and the state-court judge reasonably discerned a fair probability that a search of the computers

---

[3] The government does not appeal the district court's finding that Amanda lacked authority to consent to the search of Cathcart's computer tower.

9

would uncover evidence of criminality. Probable cause accordingly supported the search warrant in this case.

But even if probable cause was lacking, the officers who searched Cathcart's computer did so in good-faith reliance on the state-court warrant. The warrant affidavit presented to the state-court judge did not rely on a bare inference that those who molest children are likely to possess child pornography, in contravention of Ninth Circuit case law. Rather, the affidavit cataloged multiple, additional facts supporting an inference that Cathcart possessed child pornography. Even assuming the facts in the warrant affidavit did not establish probable cause, the affidavit documented, at a minimum, a colorable argument for probable cause. The good-faith exception thus precludes suppression of the child-pornography files recovered from Cathcart's computer.

## STANDARD OF REVIEW

Whether the search-warrant affidavit supported the state-court judge's probable-cause finding is a question of law subject to de novo review. *United States v. Kleinman*, 880 F.3d 1020, 1036 (9th Cir. 2017). This Court also reviews de novo the district court's application of the good-faith exception. *United States v. Crews*, 502 F.3d 1130, 1135 (9th Cir. 2007).

10

**ARGUMENT**

I. **Probable cause supported the state-court judge's decision to issue the search warrant.**

Officer Brumley's affidavit articulated probable cause to believe that child pornography would be found on Cathcart's computers, and the state-court judge properly issued the search warrant. The district court's contrary determination was error.

A. **This Court affords substantial deference to the state judge's conclusion that child pornography would likely be found on Cathcart's computers.**

Reviewing courts "do not 'flyspeck' the affidavit supporting a search warrant"; they instead afford the issuing judge's determination "great deference." *United States v. Kelley*, 482 F.3d 1047, 1050 (9th Cir. 2007) (citation omitted). Conducting a "commonsense, practical" review of the affidavit, *ibid.*, this Court asks only whether the judge had a "substantial basis for concluding that a search would uncover evidence of wrongdoing," *Illinois v. Gates,* 462 U.S. 213, 236 (1983) (internal quotation marks, alterations, and citation omitted), and whether a "fair probability" existed that "contraband or evidence of a crime will be found" in the place to be searched, *United States v. Fernandez,* 388 F.3d 1199, 1252 (9th Cir. 2004) (citation omitted). These deferential standards "apply with

equal force to cases involving child pornography on a computer." *Kelley*, 482 F.3d at 1050.

To be sure, this Court has made clear that acts of child molestation do not themselves establish probable cause to search the suspected molester's computer for child pornography. In *Dougherty v. City of Covina*, 654 F.3d 892 (9th Cir. 2011), the requesting officer's affidavit recounted allegations that the suspect had inappropriately touched students at the school where he taught, and the officer's conclusion that "subjects involved in this type of criminal behavior have in their possession child pornography." *Id*. at 896. This Court held that the officer's "conclusory statement … [wa]s insufficient to create probable cause." *Id*. at 899; *see also United States v. Needham*, 718 F.3d 1190, 1195 (9th Cir. 2013) (same). Absent from the affidavit was evidence discussing the suspect's "possession or attempt to possess child pornography" or his "computer or electronics use." *Dougherty*, 654 F.3d at 895.

But where the warrant affidavit recounts additional facts, beyond a bare inference linking acts of molestation to child pornography, the reviewing court must use the same deferential standard that applies generally when evaluating an issuing court's probable-cause determination. The reviewing court must ascertain whether the affidavit admits a "fair probability" that child-pornography evidence will be found, and must pay "great deference" to the

issuing magistrate's initial determination on this question. *Dougherty*, 654 F.3d at 897-898 (citations omitted). "[R]esolution of doubtful or marginal cases in this area should largely be determined by the preference to be accorded to warrants." *Id.* at 898 (citation omitted).

### B. The warrant affidavit articulated ample facts, beyond Cathcart's molestation offense, supporting the inference that Cathcart possessed child pornography on his computers.

In this case, Officer Brumley maintained, based on his years of training and experience, that "people who engage in child molestation often also view, collect, store, and/or distribute images of child pornography." ER 21. But Officer Brumley then articulated additional facts supporting an inference that Cathcart had collected and viewed child pornography on his computers.

███████████████████████████████████████████████████████

████████████████████████████████████ After Amanda took the iPhone and "asked … if there was anything on their computers," Cathcart responded, "[t]here shouldn't be." ER 17. That cryptic response suggests that Cathcart deleted child pornography previously stored on the computers.

Second, while under investigation, Cathcart repeatedly contacted Amanda in an effort to obtain all the home's computer devices. *See* ER 15 ("[Cathcart] requested his work computer … and his iPad."); *ibid.* ("Cathcart called her and requested some additional computers and external media storage

devices from the house."); ER 17 (Jailhouse Call: "Is my Apptio computer still at home?"); ER 17-18 ("[I]n these calls Cathcart tells his wife that he wants his IPhone and IPad when he gets out of jail."). Cathcart also asked Amanda to turn on the home computer tower so he could access it remotely. ER 16. That conduct reasonably suggests that Cathcart was trying to access his files.

Third, Officer Brumley located two hard drives at the house—each with the ability to hold thousands of photos—labeled "Photos A" and "Photos B." ER 16. Amanda reported that "the family did not take many photographs, which lends credence to the idea that whatever photos contained on that drive [were] not innocuous." ER 22.

Fourth, Amanda told Officer Brumley that Cathcart often took his laptop into the bathroom, ER 16, showing that he wanted a private place in the house for his computer activities.

Fifth, Cathcart had a sophisticated knowledge of computers that would allow him to distribute and conceal images without leaving a digital footprint. ER 22-23. He particularly "like[d] to write in codes especially for passwords." ER 16. "Although password protection of files, in isolation, will not give rise to reasonable suspicion, where, as here, there are other indicia of criminal activity, password protection of files may be considered in the totality of the circumstances." *United States v. Cotterman*, 709 F.3d 952, 969 (9th Cir. 2013).

Simply put, the warrant affidavit here supplied additional inculpatory information ███████████████████████. Those facts, in their totality, admit a fair probability that Cathcart stored child pornography on his computer devices. The state-court judge had a substantial basis for concluding that a search of those computers would yield evidence of criminality.

### C. The district court's contrary holding was error.

The district court stated that the warrant affidavit advanced nothing but "[t]he bare inference that those who molest children are likely to possess child pornography" and, accordingly, suppression was required under this Court's decisions in *Dougherty* and *Needham*. ER 109-110. That was wrong.

The district court dismissed the inculpatory significance of Cathcart's many requests to Amanda seeking his computer devices because, the court reasoned, he "maintain[ed] computers for a living." ER 108. "But probable cause does not require [the issuing judge] to rule out a suspect's innocent explanation for suspicious facts." *District of Columbia v. Wesby*, 138 S. Ct. 577, 588 (2018). The question is "whether [the issuing judge] could conclude—considering all of the surrounding circumstances, including the plausibility of the explanation itself—that there was a substantial chance of criminal activity." *Ibid*. (internal quotation marks omitted). The record here amply supports that inference. Cathcart repeatedly sought Amanda's help in recovering computer

15

devices from their home. And when Amanda offered to leave the devices at the police station for him, Cathcart instructed her "to place the items in the car and cover them with something black." ER 17. Inviting Amanda to conceal the computer devices in a parked car outside the stationhouse fairly supports an inference that they contained contraband.

The district court also dismissed the fact that Cathcart asked Amanda to turn on the home computer tower so he could remotely access it. ER 16. In the court's view, Cathcart made this request "so that he could remotely access it for work purposes." ER 108. But the warrant affidavit states that the computer tower was "not [Cathcart's] work computer." ER 21. Cathcart's desire to access it cannot, as the district court believed, be necessarily attributed to his work responsibilities.

Finally, the district court's order failed to discuss several other critical facts listed in Officer Brumley's affidavit, including Cathcart's suspicious responses to Amanda, the unexplained hard drives labeled "Photos A" and "Photos B," and Cathcart's practice of using his laptop in the bathroom.

These errors undermine the district court's holding that the search warrant was premised on a bare inference linking child molestation to child-pornography possession. This Court should reverse.

16

**II. Even if probable cause was lacking, the officers acted in good faith.**

Even if the search warrant was unsupported by probable cause, the seized evidence is admissible because the officers relied on the state-court warrant in good faith.

In *United States v. Leon*, 468 U.S. 897 (1984), the Supreme Court held that even if the magistrate's determination of probable cause was erroneous, suppression of evidence seized pursuant to the warrant is not justified if the officer acted in good-faith reliance on the warrant. *Leon*'s good-faith exception recognizes that "[t]he substantial social costs exacted by the exclusionary rule" are too great to suppress evidence "seized in reasonable, good-faith reliance on a search warrant that is subsequently held to be defective." *Id.* at 905, 907.

The good-faith doctrine accordingly applies unless "a reasonably well-trained officer would have known that the search was illegal despite the magistrate's decision," *Leon*, 468 U.S. at 922 n.23, or unless the affidavit was "bare bones," *id.* at 915—that is, "so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable," *id.* at 923 (citation omitted). Put differently, "the affidavit must establish at least a colorable argument for probable cause for the exception to apply." *Crews,* 502 F.3d at 1136 (internal quotation marks and citation omitted).

The district court found the good-faith doctrine inapplicable because officers "relied on a warrant predicated on the bare inference" of a nexus between child molestation and child-pornography possession, in violation of "clearly established" circuit law in *Dougherty* and *Needham*. ER 110. As previously detailed, that conclusion was erroneous. Officer Brumley's affidavit outlined multiple additional reasons— ████████████████████ ████—supporting an inference that he possessed child pornography.

"On its face, the affidavit was not so lacking in indicia of probable cause as to render reliance upon it objectively unreasonable." *Crews,* 502 F.3d at 1136. As a consequence, the officers who performed the search of Cathcart's computer had no reason to believe the search warrant was predicated on a barebones affidavit relying solely on the molestation nexus. The good-faith exception precludes suppression of the child-pornography files recovered here.

# CONCLUSION

The Court should reverse the district court's suppression order.

Respectfully submitted,

| | |
|---|---|
| JOSEPH H. HARRINGTON<br>United States Attorney | BRIAN A. BENCZKOWSKI<br>Assistant Attorney General |
| IAN L. GARRIQUES<br>MEGHAN M. MCCALLA<br>Assistant United States Attorneys<br>Eastern District of Washington | MATTHEW A. MINER<br>Deputy Assistant Attorney General<br><br>/s/David M. Lieberman<br>DAVID M. LIEBERMAN<br>Attorney<br>Criminal Division, Appellate Section<br>U.S. Department of Justice<br>950 Pennsylvania Ave., N.W.<br>Washington, DC 20530<br>(202) 262-6805<br>david.lieberman@usdoj.gov |

## BAIL / DETENTION STATUS

Cathcart is currently incarcerated in the State of Washington on an indeterminate sentence with the possibility of release after 10 years.  ER 100-101.

## STATEMENT OF RELATED CASES

The government states, pursuant to Ninth Circuit Rule 28-2.6, that it is unaware of any cases related to this appeal

## CERTIFICATE OF COMPLIANCE

1. This brief complies with the length limits permitted by Ninth Circuit Rule 32-1 because the brief contains 3,669 words, excluding the portions exempted by Fed. R. App. P. 32(f), if applicable.

2. This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because this brief has been prepared on a proportionally spaced typeface using Microsoft Word 2013 in 14-point Calisto MT font.

/s/David M. Lieberman