# 18-30163

IN THE UNITED STATES COURT OF APPEALS
FOR THE NINTH CIRCUIT

---

**UNITED STATES OF AMERICA,**

**Plaintiff - Appellant,**

**v.**

**JASON WILLIAM CATHCART,**

**Defendant - Appellee.**

---

On Appeal From The United States District Court
For The Eastern District of Washington
District Court No. 1:16-CR-2044-SAB-1
The Honorable Stanley A. Bastian, United States District Judge

---

## DEFENDANT - APPELLEE'S REDACTED
## ANSWERING BRIEF

---

Jeremy B. Sporn
Federal Defenders of Eastern Washington
& Idaho
306 E. Chestnut Ave.
Yakima, WA 98901
(509) 248-8920
Email:  jeremy_sporn@fd.org
Attorney for Defendant - Appellee

# **TABLE OF CONTENTS**

STATEMENT OF THE CASE..................................................................................1

I. The Warrants Did Not Establish Probable Cause And Relied On a Nexus This Court Rejects..................................................................................6

    A. The Government's Argument Misapprehends Legal Principles Governing Probable Cause Determinations.................................................7

    B. Additional Facts are Not Suggestive of Child Pornography...............11

    C. Other Cases Highlight the Lack of Probable Cause Here..................20

II. The Officer's Conduct Precludes The Good Faith Exception......................23

CONCLUSION....................................................................................28

i

## <u>TABLE OF AUTHORITIES</u>                    **Page**

*District of Columbia v. Wesby*, 138 S. Ct. 577 (2018) …………………………... 8

*Dougherty v. City of Covina*, 654 F.3d 892 (9th Cir. 2011) ……………….. *passim*

*Illinois v. Gates*, 462 U.S. 213 (1983) …………………………………………. 19

*Ramirez v. City of Buena Park*, 560 F.3d 1012 (9th Cir. 2009) ………………… 8

*United States v. Arvizu*, 534 U.S. 266, 274 (2002) ……………………… 9, 18, 19

*United States v. $242,484*, 35 F.3d 499 (11th Cir. 2003) ………………………... 9

*United States v. $ 67,220.00*, 957 F.2d 280 (6th Cir. 1992) ……………………... 9

*United States v. Cortez*, 449 U.S. 411 (1981) …………………………………… 8

*United States v. Doyle*, 650 F.3d 460 (4th Cir. 2011) ……………………… 21, 25

*United States v. Falso*, 544 F.3d 110 (2d Cir. 2008) …………………………… 22

*United States v. Gourde*, 440 F.3d 1065 (9th Cir. 2006) ……………………….. 21

*United States v. Grant*, 682 F.3d 827 (9th Cir. 2011) …………………………... 23

*United States v. Hodge*, 89 F. Supp. 2d 668 (D. V.I. 2000) ……………………. 10

*United States v. Hodson*, 543 F.3d 286 (6th Cir. 2008) ……………………...22, 25

*United States v. Hove*, 848 F.2d 137 (9th Cir. 1988) ……………………… 23, 26

*United States v. I.E.V.*, 705 F.3d 430 (9th Cir. 2012) …………….…………….. 9

*United States v. Kastis*, 2018 U.S. Dist. LEXIS 148840, at *26-30
(E.D. Cal. Aug. 30, 2018) ……………………….……………………………... 22

*United States v. Kelly*, 482 F.3d 1047 (9th Cir. 2007) ………………………….. 20

*United States v. Leon*, 468 U.S. 897 (1984) ………………………………… 23, 26

*United States v. Lopez*, 482 F.3d 1067 (9th Cir. 2007) …………………………. 8

ii

*United States v. Luong*, 470 F.3d 898 (9th Cir. 2006) …………………………... 23

*United States v. Needham*, 718 F.3d 1190 (9th Cir. 2013) ……………….. *passim*

*United States v. Ortiz-Hernandez*, 427 F.3d 567 (9th Cir. 2005)………………... 8

*United States v. Parks*, 285 F.3d 1133 (9th Cir. 2002) …………………………. 10

*United States v. Perkins*, 850 F.3d 1109 (9th Cir. 2017) …………………… 21, 26

*United States v. Pippin*, 2017 U.S. Dist. LEXIS 66841, at *12-17
(W.D. Wash. May 2, 2017) …………………………....…………………... 22, 24

*United States v. Rabe*, 848 F.2d 994 (9th Cir. 1988) ……………………………  21

*United States v. Reilly*, 76 F.3d 1271 (2d Cir. 1996) ………………..………... 23

*United States v. Richardson*, 607 F.3d 357 (4th Cir. 2010) ……………………. 20

*United States v. Schesso*, 730 F.3d 1040 (9th Cir. 2013) ……………………… 20

*United States v. Schultz*, 14 F.3d 1093 (9th Cir. 1994) …………………………  10

*United States v. Stevens*, 1992 U.S. Dist. LEXIS 10980, at *8
(S.D.N.Y. July 9, 1992) …………………...……………………………….. 17

*United States v. Tagg*, 886 F.3d 579 (6th Cir. 2018) ……………………………. 20

*United States v. Valenzuela*, 365 F.3d 894 (10th Cir. 2004) …………………...  10

*United States v. Weber*, 923 F.2d 13389th Cir. 1991) …………………..  19, 22, 26

*United States v. Zimmerman*, 277 F.3d 426 (3d Cir. 2002) ……………………..  23

*Virgin Islands v. John*, 654 F.3d 412 (3d Cir. 2011) ………………………... 22, 25

The defendant-appellee, Jason Cathcart, respectfully submits this brief in response and opposition to the Government's opening brief, filed under seal on December 7, 2018, and then again in a public, redacted version on December 21, 2018. "Govt Br." The Government appeals from an order of the district court suppressing evidence seized in violation of the Fourth Amendment. Government's Sealed Excerpts of Record, Volume 2 ["ER"] 96-111. The district court, however, committed no error; its conclusions are a carefully considered, legally sound and straightforward application of this Court's binding precedent to the facts. The Government's approach to probable cause is to seize on a series of innocent circumstances and wrongfully start from the premise that Mr. Cathcart *must* have been guilty of additional offenses relating to child pornography. But viewed from a more neutral perspective, and even accounting for the totality of circumstances, the warrants at issue did not establish probable cause to suspect Mr. Cathcart of child pornography offenses. And under the circumstances present, the "good faith" exception does not displace the exclusionary rule to resurrect the fruits of an illegal search. Accordingly, the district court's order should be affirmed.

## STATEMENT OF THE CASE

Early in the morning of March 31, 2016, ██████████████████
████████████████████████████████████
████████████████████████████████████

1



Mr. Cathcart turned himself in to the Selah Police later that day, and admitted in an interrogation ███████████████████████████████ ████████████████. ER 14; SER 61-62. Mr. Cathcart told the officers that he maintains computers for data centers, working on the internet and from home remotely. ER 14; SER 71-73. He was asked about any pornography on his laptop or desktop, but issued a general denial. ER 14; SER 72; 80-81. The officer came

back to the subject later in the interview, when Mr. Cathcart unequivocally denied involvement with child pornography.  SER 80-81.

Mr. Cathcart was charged in State court with ███████████████ .

Before he posted bond, Mr. Cathcart had several conversations with his wife in which he inquired about his work computer, clothes to wear once he was released from custody, and access to his electronic devices at the house so that he could work.  ER 17.  In other words, he was preparing to live and work for a period of time away from the house, and ensuring that he had clothes and access to the necessary equipment.

On this limited basis, the investigating officer applied for and was granted a search warrant to seize and conduct a forensic search of Mr. Cathcart's electronic devices.  SER 32-38.  When the officers went to execute the warrant, ████████

████████████████████████████████████████

████████████████████████████████████████ .

After taking custody of the devices, and beginning his review, the officer learned some additional facts, including that Mr. Cathcart had asked her to turn on a home desktop computer for him to access remotely, and that he told her "There shouldn't be" when she asked if there was "anything on their computers."  EC 16-17.  He also began a review of some of Mr. Cathcart's devices, but did not discovery anything incriminating.  ER 17-18.

Officer Brumley applied for and obtained an additional search warrant for a forensic examination of the devices seized several days earlier. ER 11-28. He recounted the same facts as above, but this time included a section entitled "Nexus," which purports to establish that based on training and experience, "people who engage in child molestation often also view, collect, store and/or distribute images of child pornography." ER 21-23. This part of the warrant affidavit is long on supposition, conjecture, and conditional logic, but short on actual facts that establish probable cause. *Id.* Based on the evidence of molestation, he "find[s] it likely that Cathcart has previously viewed, collected, stored and/or distributed child pornography." ER 21. ███████████████

████████████████████████████████████████████████, Brumley speculates that it "may have been preceded by a period of viewing and collecting child pornography." ER 21. Mr. Cathcart's requests for access to the devices at the house "could suggest an intent to destroy evidence and cover his tracks." ER 22. He then engages in a wild chain of syllogisms that seeks to demonstrate how the limited facts might support his conclusory belief of Mr. Cathcart's involvement in child pornography. ER 22-23. Brumley employs a logic dependent on "If A, then B," but ignores that the initial premise – the "A" being Mr. Cathcart's association with child pornography – is wholly unfounded and does not rise anywhere close to probable cause.

4

███████████████████████████████████████████

███████████████████████████████████████████

████████████████████████. He moved to suppress on the basis of an illegal

search, and the State responded, citing many of the same facts that the Government

now argues [Govt Br. at 13-17; SER 136-40] supported probable cause. The

Superior Court Judge granted the motion to suppress, and then dismissed the case

████████████████████████, which was dependent on the fruits of the illegal

search, and then denied the State's motion for reconsideration. SER 142. Mr.

Cathcart then pleaded guilty to the first case ████████████████, and was

sentenced to life imprisonment. He is currently serving that sentence in

Washington.

Meanwhile, the government had indicted Mr. Cathcart on two charges of

production of child pornography, in violation of 18 U.S.C. § 2251(a). After being

sentenced in 2017 in State court, he was brought into federal custody in this case.

Mr. Cathcart, through counsel, again moved to suppress, on many of the same

grounds that he had argued in State court. SER 1-28. The district court conducted

a hearing, at which the government declined to call any witnesses or offer any

evidence. ER 32-95. The court offered the government another opportunity to call

witnesses, but it declined the invitation. ER 10 (referencing ECF Document No.

42, *Notice of Intent to Rely on Record and not call witnesses*). The district court

5

issued an order on July 5, 2018, suppressing the evidence and finding that Mrs.

Cathcart lacked actual or apparent authority to consent to a search of her husband's

devices, that the warrant lacked probable cause, and that the good faith exception

did not apply.  ER 96-111.  The government then appealed, although it does not

appeal the determination that ███████████████████████████████████

███████████.  Govt Br. at 9 n.3.

## POINT I – THE WARRANTS DID NOT ESTABLISH PROBABLE CAUSE AND RELIED ON A NEXUS THIS COURT REJECTS

The government does not take issue with the lower court's conclusion that

evidence of molestation (in this case or any other) is insufficient to establish

probable cause to search electronic devices for evidence of child pornography.  ER

108-09; Govt Br. at 12.  Of course, any such challenge would be in direct

contravention with clear statements[1] this Court has made on the matter.  *See United*

*States v. Needham*, 718 F.3d 1190, 1195-96 (9th Cir. 2013) ("[I]t is clear in this

circuit that such an inference [that "those who molest children are likely to possess

child pornography"] alone, does not establish probable cause to search a suspected

child molester's home for child pornography"); *Dougherty v. City of Covina*, 654

---

[1] The clarity of those statements precludes any reliance on the good-faith
exception, as discussed *infra*.  *See Needham*, 718 F.3d at 1195-96; *Dougherty*, 654
F.3d at 900 (noting that defendants were entitled to qualified immunity because the
bar on an evidentiary nexus between molestation and child pornography "was not
clearly established at the time of the alleged violation").

F.3d 892 (9th Cir. 2011). The government's argument, and the success of its appeal, boils down to the strength of the non-molestation evidence, and whether those facts are strong enough to create probable cause to believe that Mr. Cathcart committed a child pornography offense, and whether it was likely to be found in the areas searched. They are not. This is not a borderline, doubtful or marginal case.

### A. The Government's Argument Misapprehends Legal Principles Governing Probable Cause Determinations

The government is of course correct that probable cause is determined by the totality of circumstances. But the critical point is that the aggregate of whatever those circumstances are, must actually amount to probable cause. The totality of circumstances is not a substitute for actual indicia that the defendant committed and that evidence thereof will be found in the suspect location. Nor is it a talisman to ward off a meritorious suppression motion when the actual facts fall short of demonstrating probable cause. All of nothing still amounts to nothing. Innocuous information and unsupported inference are not the sorts of circumstances that, even in their totality, support probable cause. Non-incriminating circumstances do not become incriminating merely by the invocation of the phrase *totality of circumstances*. Innocent or innocuous facts may be considered, but if they do not add any value to the reviewing court's analysis, then they add no value, and the fact that there are more of them is meaningless.

7

It may be that in some cases with respect to probable cause, the whole is greater than the sum of its parts. But considering the "whole picture" instead of each individual component in isolation still requires that that picture actually depict the suspect's wrongdoing. *See District of Columbia v. Wesby*, 138 S. Ct. 577, 588 (2018) (citing *United States v. Cortez*, 449 U.S. 411, 417 (1981)). The government cites [Govt Br. at 15] language in *Wesby* that issuing magistrates are not "require[d] to rule out a suspect's innocent explanation for suspicious facts," 138 S. Ct. at 1588. But nor are they required to indulge dubious inferences or to simply defer unquestioningly to law enforcement's characterizations of innocuous facts that do not establish probable cause. Innocent or innocuous facts do not eliminate suspicious facts from a probable cause determination, *see Ramirez v. City of Buena Park*, 560 F.3d 1012, 1024 (9th Cir. 2009), but they do not *become* suspicious facts in the absence of a particularized basis for suspicion. Similarly, nor does the totality of circumstances permit law enforcement to "disregard facts tending to dissipate probable cause." *United States v. Lopez*, 482 F.3d 1067, 1073 (9th Cir. 2007). "The effect of evidence which may support, or incline toward, a finding of probable cause can, of course, be vitiated by countervailing evidence." *Id.* at 1074 (citing *United States v. Ortiz-Hernandez*, 427 F.3d 567, 574 (9th Cir. 2005)).

As multiple courts explain, they "cannot possibly evaluate the totality of the circumstances without first understanding those circumstances. Then, we estimate

how strongly they each indicate a connection to drug crime in the case at hand. We accept that in some cases the whole might be greater than the sum of its parts. But to determine whether the whole exceeds the threshold of probable cause, we first look at the parts." *United States v. $242,484*, 35 F.3d 499, 507 (11th Cir. 2003) (citing *United States v. $ 67,220.00*, 957 F.2d 280, 284-86 (6th Cir. 1992)) (examining each piece of evidence individually for probative value and then considering the evidence in aggregation). These circumstances only point to probable cause if we start from the presumption that Mr. Cathcart committed a child pornography offense. Only through *that* filter does the totality of circumstances point to probable cause. But that approach is of course inappropriate because it would denude the probable cause requirement of any real meaning.

Here, the district court did as it was required to: it avoided the type of "divide-and-conquer analysis" that focuses on each piece of evidence and considers only whether such evidence, by itself, is susceptible to an innocent explanation[2]. *See United States v. Arvizu*, 534 U.S. 266, 274 (2002). Rather, it

---

[2] In warning against a so-called "divide and conquer analysis" that looks at innocuous facts "in isolation from each other," the Supreme Court in *Arvizu* was considering whether a series of factors amounted to reasonable suspicion for a traffic stop, and not probable cause for the issuance of a search warrant. 534 U.S. at 274-75. Probable cause, this Court has stated, is a "much higher standard" than reasonable suspicion. *See United States v. I.E.V.*, 705 F.3d 430, 437 n.4 (9th Cir. 2012). Thus, the "divide and conquer" admonition makes more sense in the

determined the latter question by looking at the totality of circumstances. Sometimes, totality of circumstances simply fails to amount to probable cause.

The corollary to the Supreme Court's "divide and conquer" language is that "neither may a court arrive at probable cause simply by piling hunch upon hunch," nor should it ignore those factors that "militate against" a finding of probable cause. *United States v. Valenzuela*, 365 F.3d 894, 897 (10th Cir. 2004) (citing cases). Probable cause does not require undue deference to the suspicions of law enforcement. Relatedly, while courts may rely to some extent on an officer's training and experience, *United States v. Parks*, 285 F.3d 1133, 1142 (9th Cir. 2002), those factors do not "substitute for the lack of an evidentiary nexus between the place searched and the criminal activity". *United States v. Schultz*, 14 F.3d 1093, 1097 (9th Cir. 1994). "[A]n officer's experience is not a talisman before which the requirements of the Fourth Amendment disappear." *United States v. Hodge*, 89 F. Supp. 2d 668, 677 (D. V.I. 2000). Against this legal backdrop, the warrant affidavit plainly lacks sufficient facts to establish probable cause to search Mr. Cathcart's home and electronic devices for evidence of child pornography offenses.

---

context of the lesser standard for reasonable suspicion. Facts that individually are susceptible of an innocent explanation are more likely, in the aggregate, to amount to reasonable suspicion than to probable cause.

## B. **Additional Facts are Not Suggestive of Child Pornography**

The government, as it did below and as the State did in Superior Court, seizes upon a series of facts that it contends created probable cause beyond the bare inference that child molesters are likely to possess child pornography. Govt Br. at 15. The district court did not give significant credence to that series of facts because even accounting for the totality of circumstances, they failed to create a likelihood that child pornography would be found on Mr. Cathcart's devices. ER 106-09. We are not asking this Court or the district court to "flyspeck" anything [Govt Br. at 11], but simply to recognize that in the context of child pornography offenses, the facts in the warrant and in the government's discussion do not produce a basis, substantial or otherwise, to connect Mr. Cathcart to child pornography in any meaningful way.

We begin with Mr. Cathcart's interview statements to both investigators and ▮▮▮▮▮▮. The Officer twice asked Mr. Cathcart about viewing child pornography.[3] After the initial denial, Officer Singletary asked again later, "Your laptop and desktop, is there gonna be any porn or anything like that on them?" Mr. Cathcart answered, "I don't think so, no." The Officer followed up, "Okay. So, no child

---

[3] The initial query was phrased to include adult pornography, which further diminishes any probative weight to Mr. Cathcart's answer, which was in the negative, in any event. SER 72.

porn, nothing like that? You've never taken pictures?" Mr. Cathcart answers, "No." And then, one last follow up: "Inappropriate pictures or anything like that?" Again, Mr. Cathcart answers, "No." SER 72, 80-81. A denial is a denial. How can a denial of an offense – and it is clear that Mr. Cathcart's response was a denial – constitute probable cause that an offense was committed?

As to ███████████████████████████████████████ ███████████████████████████████████████████████ ████████████. His response evidently was 'There shouldn't be[4].'" ER 17. That the officer included that exchange in the affidavit means neither that it was incriminating, or that he was even seeking to attach any inculpatory meaning to it. To have any significance whatsoever, requires three assertions, all of which are

---

[4] It is concerning that Brumley included in his affidavit this unrecorded conversation between himself and ███████████████████████ ████████████████████████████████████████████████ ████████████████████████████████████████████████ ████████████████████████████████████████████████ ████████████████████████████████████████████████ ████████████████████████████████████████████████ ██████████████████████████.

We do not believe it was necessary to conduct a full-blown *Franks* analysis based on material omissions, since the warrant plainly lacks probable cause either way. But the omission likewise cuts against any finding that the officer was acting in good faith by objectively reasonable reliance on the defective warrant.

12

unsupported: (1) that in using the term "anything," ███████ was explicitly referring to child pornography or evidence of a related offense; (2) that Mr. Cathcart would have had the same understanding; and that (3) his use of language that was more qualified than absolute connotes some degree of doubt or lack of certainty as to the presence of contraband on the devices. To be incriminating, all of those things need to be true, in addition to some likelihood that Mr. Cathcart's phrasing was a departure from more typical use of absolutist language. But all of these things are unsupported. If anything, Mr. Cathcart's language in the interview with law enforcement [SER 60-88] indicates he speaks, in a cautious, somewhat qualified manner. His apparent response to ███████ was not "cryptic" [Govt Br. at 13], nor does it come close to suggesting that he deleted contraband previously stored on his devices.



Similarly, ████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████. But police have never had that luxury, particularly in asking a Judge to issue search warrants, as the Fourth Amendment requires much more.

The government again brings up ████████████████████

████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

██████████████████████. The government may be correct that this

conduct reasonably suggests that he "was trying to access his files" [Govt Br. at

14], but offers no reason to conclude or suspect that those files had anything to do

with child pornography. Mr. Cathcart worked remotely in information technology,

maintaining computers for electronic data centers mostly from his house. ER 14,

17; SER 71-73, 107. Thus, in order to work remotely, especially since he was not

permitted to return to the house, Mr. Cathcart needed access to certain devices.

This activity does not suggest reasonably or fairly that his requests related to child

pornography or any attempt to delete evidence, as the district court found. ER

107-08. They do not suggest there *was* evidence to delete in the first place[5].

---

[5] The government argues that Mr. Cathcart's ████████████████████
████████████████, which was not his primary work computer, is suspicious
and cannot be "attributed to his work responsibilities." Govt Br. at 16. But that

Further, there is no basis to believe that his request for his iPhone was an attempt to delete either child pornography or evidence of molestation, because ████████████████████████████████████████████████ ████████████████. ER 14, 18; SER 93, 102, 104-05. Thus, since it had little independent value to the investigation at that point, Mr. Cathcart wanted his phone back and nothing more. That is not incriminating and does not suggest activity related to child pornography. ███████████████████████ ████████████████████████████████████████████████ ████████████████████████████████████████████ ███████████████████████. Govt Br. at 16; ER 17. Nothing about that "fairly supports an inference that they contained contraband." Govt Br. at 16. The government's attempt to put some incriminating sheen on a fact as innocuous as that is telling[6].

---

hardly establishes that Mr. Cathcart did not use this "home" computer for work purposes, even if it was not his primary "work computer," ████████████ ████████████████████████████████████. ER 16, 21. Even if it was not work related, there are legitimate reasons for accessing a home computer that have nothing to do with child pornography or other illegal activity. It requires an inferential leap to conclude that Mr. Cathcart's request suggests or even hints at the presence of child pornography on that or any other device.

[6] Worse, the government stretches the bounds of fair inference by suggesting ████████████████████████████████████████████████ ████████████████████." Govt Br. at 16. A look at the record evidence for this assertion [ER 17] reveals that such a characterization is not accurate. The facts are not

15

The government also suggests that Mr. Cathcart's "sophisticated knowledge of computers would allow him to distribute and conceal images without leaving a digital footprint." Govt Br. at 14. It might, but this is pure speculation, and his sophistication in computer matters does not suggest or make it likely there was anything to conceal. Mr. Cathcart's aptitude with computers, networking and the internet, does not by itself or in conjunction with other facts, make it more likely that his devices contained child pornography in the first instance. It takes no great skill to access child pornography. Defendant after defendant come before the court after having viewed or possessed child pornography, and they are often nearly dysfunctional in almost every realm of their affairs. Moreover, technical ability makes it *less* likely that Mr. Cathcart would have resorted to the primitive technique of labelling external hard drives drives containing contraband "Photos A" and "Photos B," another purportedly incriminating or suspicious fact that more closely resembles cartoon villainy than the reality of how child pornography is concealed and stored or how a sophisticated computer like Mr. Cathcart might do so.

Further, the two inferences the government asks the Court to draw are thus logically inconsistent and are unlikely to both be true at the same time,

---

sufficiently inculpatory, so the government simply stretches them to conform to its theory and to create a basis for suspicion.

symptomatic of its approach overall with the facts. Mr. Cathcart is sophisticated where the Government needs him to be, but primitive or retrograde with respect to other, purportedly incriminating factors like taking an electronic device into the bathroom[7]. He denies looking at child pornography, but in the officer's experience, suspects often withhold information [SER 35], so the denial is incriminating too, and cryptic as well. Likewise, the *lack* of digital footprint, or the "ability to conceal images without leaving a digital footprint" [Govt Br. at 14] confirms Mr. Cathcart's sophistication, in turn creating further evidence that child pornography would be found. This approach, dependent on conditional, syllogistic and contradictory unsupported inferences, bespeaks neither probable cause nor good faith. *See United States v. Stevens*, 1992 U.S. Dist. LEXIS 10980, at *8 (S.D.N.Y. July 9, 1992) ("A determination of probable cause depends on common sense, not syllogisms"). The absence of evidence is not evidence. Otherwise probable cause would be *per se* established in virtually every case and the Fourth Amendment would be rendered a nullity.

---

[7] Bringing an electronic device into the bathroom may or may not be unusual, but even accounting for the totality of circumstances, it does not suggest the presence of child pornography on that or any other device belonging to Mr. Cathcart. It would be just as likely that Mr. Cathcart looked at adult pornography in the bathroom, that he simply did not want to leave a work device accessible to his children while he was in the bathroom, or endless other possibilities. Probable cause, however, is not an exercise in such rank speculation.

It seems apparent that law enforcement suspected a child pornography offense on Mr. Cathcart's part, and then attempted to use what meager evidence was available to conform to or accommodate their pre-existing theory. But the pieces do not lead, ineluctably or otherwise, to the desired conclusion. And that approach likewise demonstrates that the good faith exception is inapplicable.

Considering the totality of circumstances does not require that reviewing courts give credence to the probative value of acts and statements that are entirely innocent and do not point to further wrongdoing. As the Supreme Court reminds, "some factors are more probative than others." *Arvizu*, 534 U.S. at 277. And some, despite their inclusion in a warrant affidavit, have virtually no probative weight. The government complains that the district court "failed to discuss several other critical facts" [Govt Br. at 16] in the affidavit, but it is not entitled to a discussion of every fact the government might find worthy of inclusion. It is likely that the district court did not explicitly refer to certain facts because they were entirely insignificant in the context of the discussion. That does not mean that the district court failed to consider them, or more importantly, that it did anything other than to consider the totality of circumstances. Ironically, the government engages in the type of "flyspecking" that it elsewhere decries.

The totality of circumstances is not some means of alchemy by which investigators or prosecutors can transmute a series of innocuous facts into probable

18

cause. The facts, even collectively, need to lead logically and reasonably in that direction, as in *Arvizu*, 534 U.S. at 277-78 (discussing a series of factors that collectively gave rise to reasonable suspicion of trafficking or smuggling operations), or other cases dealing with child pornography, discussed *infra*. Here, they did not, and the district court granted the motion to suppress accordingly.

If the facts as recounted in Officer Brumley's affidavit did not *exclude* the possibility that Mr. Cathcart possessed child pornography, neither did they establish a "substantial basis" for that belief. *See Dougherty*, 654 F.3d at 898 (citing *United States v. Weber*, 923 F.2d 1338, 1343 (9th Cir. 1991) and *Illinois v. Gates*, 462 U.S. 213, 238 (1983)). Arguably, they did not establish reasonable suspicion either; at most they furnished a reason to investigate further so as to acquire the kinds of facts that would support probable cause and the issuance of a valid warrant. In the context of the investigation into Mr. Cathcart, and child pornography offenses more generally, the facts in Brumley's affidavit or the government's discussion [Govt Br. at 13-16] are minimally probative, and do not make any more or less likely that Mr. Cathcart engaged in such conduct. Their probative value is almost meaningless, as the district court recognized. The government gives no reason to reconsider that judgment, even on *de novo* review.

19

## C.  <u>Other Cases Highlight the Lack of Probable Cause Here</u>

In cases where this Court and others have upheld probable cause
determinations in child pornography warrants, there is little in the way of an
inarticulate hunch.  Instead, they rely on specific, direct evidence linking the
defendant and the place to be searched to actual crimes involving child
pornography, and little speculation.  *See United States v. Tagg*, 886 F.3d 579, 584-
90 (6th Cir. 2018) (investigation revealed that IP address linked to defendant had
accessed "Playpen" website on "dark web" for "five hours over thirty days and
viewed hundreds of pages containing child-pornography files" and had "click[ed]
on over 160 hyperlinks that were blatant advertisements for child pornography");
*United States v. Schesso*, 730 F.3d 1040, 1045-47 (9th Cir. 2013) (finding
substantial basis for probable cause to search for child pornography where affidavit
recounted that IP address traced to defendant was used to upload and distribute
child pornography video onto peer-to-peer network); *United States v. Richardson*,
607 F.3d 357 (4th Cir. 2010) (probable cause existed where evidence showed
defendant's email accounts used to distribute child pornography and were also
linked to defendant's residence); *United States v. Kelly*, 482 F.3d 1047, 1051-55
(9th Cir. 2007) (evidence that defendant had used different email accounts to
receive multiple emails containing similar child pornography images allowed for
reasonable inference that he was a willing recipient and therefore for the fair

20

probability of child pornography on his computer); *United States v. Gourde*, 440 F.3d 1065, 1066-68, 1070-74 (9th Cir. 2006) (affidavit listed that defendant was a listed subscriber of known child pornography website earlier in the year, and identified him by name, email address, home address and length of membership, creating fair probability that defendant had downloaded contraband images); *United States v. Rabe*, 848 F.2d 994, 995-96 (9th Cir. 1988) (noting direct evidence that suspect had child pornography in the home and admitted to owning such contraband).   These sorts of specifics are absent here.

In contrast to those cases, where courts have found deficiencies in the warrants to search for child pornography, they lacked any direct, meaningful nexus between the defendant and child pornography, and proceeded more on hunch and speculation alone, as was the case here.  *See, e.g.*, *United States v. Perkins*, 850 F.3d 1109, 1120-23 (9th Cir. 2017) (defendant's prior convictions for incest and child molestation, along with discovery of two images depicting nude young girls on the laptop he was carrying did not furnish probable cause to search home computer for child pornography); *Needham*, 718 F.3d at 1194-95 (warrant lacked probable cause where it alleged that defendant had molested young boy, was a registered sex offender, and had prior conviction for possessing obscene matter); *United States v. Doyle*, 650 F.3d 460, 462-63 (4th Cir. 2011) (warrant invalid despite evidence that defendant molested boys at his house and showed them

21

pictures of nude boys, because "nothing indicated if or when child pornography allegedly existed in Doyle's home"); *Virgin Islands v. John*, 654 F.3d 412, 419-21 (3d Cir. 2011) (affirming suppression where warrant affidavit established only that teacher had sexually molested students at school and kept evidence thereof in notebooks at home, but no association in any way with child pornography); *United States v. Falso*, 544 F.3d 110, 121 (2d Cir. 2008) (finding that the warrant affidavit did not amount to probable cause to search for evidence of child pornography offense absent "specific allegations" that the defendant had actually viewed such contraband); *United States v. Hodson*, 543 F.3d 286, 292-93 (6th Cir. 2008) (despite undercover agent's explicit internet chats with defendant in which he admitted sexually molesting young boys, nothing else tended to show some connection to child pornography offenses); *see also Dougherty*, 654 F.3d at 896-900; *Weber*, 923 F.2d at 1344-45; *United States v. Kastis*, 2018 U.S. Dist. LEXIS 148840, at *26-30 (E.D. Cal. Aug. 30, 2018); *United States v. Pippin*, 2017 U.S. Dist. LEXIS 66841, at *12-17 (W.D. Wash. May 2, 2017).  Mr. Cathcart's case far more closely resembles this series of cases than the one in the preceding paragraph where there was a substantial basis for probable cause to search for child pornography offenses.

## POINT II – THE OFFICER'S CONDUCT PRECLUDES THE GOOD FAITH EXCEPTION

The government argues that even if probable cause was lacking, the exclusionary rule should nevertheless not be applied because Officer Brumley obtained and relied on the warrants in good faith. Govt Br. at 17-18. But the district court found otherwise, rejecting this argument in light of this Court's statements, as well as the Supreme Court's decision in *United States v. Leon*, 468 U.S. 897 (1984). But as with the probable cause discussion, there is no reason to alter the district court's conclusion. Indeed, to permit the good faith exception to resurrect a defective warrant, in this instance, is not so much to weaken the exclusionary rule, but to eviscerate it altogether.

Both this Court and others often remain skeptical of governmental reliance on the good faith doctrine in these kinds of circumstances. *See United States v. Reilly*, 76 F.3d 1271, 1280 (2d Cir. 1996) ("Good faith is not a magic lamp for police officers to rub whenever they find themselves in trouble"); *United States v. Zimmerman*, 277 F.3d 426 (3d Cir. 2002) (reversing denial of suppression premised on good faith because "[w]hen the Supreme Court announced the good faith exception in *Leon*, it weakened the exclusionary rule, but it did not eviscerate it"); *United States v. Grant*, 682 F.3d 827, 837-40 (9th Cir. 2011); *United States v. Luong*, 470 F.3d 898, 903-04 (9th Cir. 2006); *United States v. Hove*, 848 F.2d 137, 140 (9th Cir. 1988) (if law enforcement has "not presented a colorable showing [of

23

probable cause], and the warrant and affidavit on their face preclude reasonable reliance, the reasoning of *Leon* does not apply").

As referenced earlier, this Court has already indicated twice that the good faith exception does not apply in these types of circumstances. *See Needham*, 718 F.3d at 1195-96; *Dougherty*, 654 F.3d at 900; *see also Pippin*, 2017 U.S. Dist. LEXIS 66841, at *18-19. First, *Dougherty* found that the police defendants were entitled to qualified immunity because the applicable rule – that evidence of molestation does not provide an evidentiary nexus to or probable cause to search for child pornography - "was not clearly established at the time of the alleged violation." *Id.* As of 2011, when *Dougherty* was decided, it became clearly established, however. *Needham* confirmed as much explicitly: "Since the date we decided *Dougherty*, it is clear in this circuit that such an inference [that "those who molest children are likely to possess child pornography"] alone, does not establish probable cause to search a suspected child molester's home for child pornography." 718 F.3d at 900. The clarity of those statements, as well as the underlying substantive conclusions in both, thus makes the officer's reliance on that forbidden nexus objectively unreasonable, and in turn precludes any reliance on the good-faith exception.

Judge Berzon wrote a concurring opinion in *Needham* that lays out in detail why the officer's approach in that case, mirrored here, was not objectively

24

reasonable.  *See Needham*, 718 F.3d at 1197-1202; *see also John*, 654 F.3d at 418-22 (good faith exception did not apply where "affidavit's indicia of probable cause with respect to child pornography is completely empty" and allegations of sex crimes against children are "not sufficient to establish – or even to hint at – probable cause as to the wholly separate crime of possessing child pornography . . . the linchpin allegation on which any reasonable belief in the existence of probable cause must have depended"); *Doyle*, 650 F.3d at 474-76 (rejecting good faith exception where "nothing indicated when or if child pornography allegedly existed in Doyle's home" and that an "objectively reasonable officer would not rely on a warrant application so devoid of necessary information"); *Hodson*, 543 F.3d at 292-93 (good faith exception did not apply because any reasonably well-trained officer would have realized that probable cause to search for evidence of molestation did not create probable cause to search for evidence of child pornography, and officer's subjective knowledge did not alter the calculus).  Judge Berzon concluded, with particular resonance here:

> If it was unreasonable for officers to rely on the warrant in *Doyle*, where there was at least some evidence in the affidavit that the defendant had possessed nude pictures—albeit no evidence as to whether the pictures were pornographic, or when they were possessed—and in *Hodson*— where there was at least some evidence in the affidavit that the defendant had used a computer for sexual contact with a minor—then surely it was unreasonable for the officers to rely on the warrant in this case. Here, the affidavit did not include even the stray mention of nude pictures that was deemed insufficient in *Doyle*, or the evidence of computer use that was deemed insufficient in *Hodson*.

25

*Needham*, 718 F.3d at 1200-01.

The *Needham* affidavit relied impermissibly on a "word cloud of vague associations between Needham and various other types of illicit actors," and Judge Berzon criticized the kind of "rambling boilerplate recitations designed to meet all law enforcement needs" without any individualized or particularized analysis of the facts at hand and why they establish probable cause. *See id.* (citing *Weber*, 923 F.2d at 1345); *see also Perkins*, 850 F.3d at 1120. In substance and in form, the "Nexus" portion of the affidavit here has the same infirmities. ER 21-23.

Contrary to the government's argument, the Officer had no reason to believe the warrant was anything other than a barebones ratification of his own conclusory, unsupported assertions. Good faith does not apply because the warrant so lacks indicia of or a colorable argument for probable cause as to make reliance on it objectively unreasonable. *See Leon*, 468 U.S. at 923; *Hove*, 848 F.2d at 940. If it were otherwise, he would not have needed to employ the strained artifice of stringing together innocuous facts to create dubious, unwarranted inferences. Nor would he have needed to rely so heavily on an inference that this Court has explicitly rejected on multiple occasions.

Thus, whereas the government typically grasps at the good faith exception by noting the deterrent effect of the exclusionary rule, affirming the district court's order would deter officers from employing an approach that proceeds not by

26

evidence and facts, but by hunch and unsupported inference alone. Officers who conduct investigations that take the defendant's guilt as the point of departure irrespective of the evidence do not act in good faith. Shaping the facts to point to and conform to a pre-existing theory is not good faith policing.

Further, whereas the government laments the "substantial social costs exacted by the exclusionary rule," affirming the district court's order does not impose any social costs or leave Mr. Cathcart unpunished or unaccountable for his misconduct. Govt Br. at 17. To the contrary, he is serving a *life* sentence in the State corrections system for *the same underlying conduct* out of which the production charges arose. The government notes that Mr. Cathcart is serving an "indeterminate sentence with the possibility of release after 10 years." Govt Br. at 20. More accurately, Mr. Cathcart is serving a sentence of *life* imprisonment, and his eligibility for possible release after 10 years hardly assures that he will ultimately be released or will avoid the ignominious fate of dying in prison. The great evil of his misconduct is the underlying acts of molestation; that he purportedly took photographs of the act (although presumed innocent), particularly without any evidence that he intended to disseminate or distribute such images, is almost incidental. The fact that it may have been photographed is less disturbing than the underlying actions themselves.

**Conclusion**

The operative search warrant did not establish probable cause, and the good faith exception to the exclusionary rule does not apply. For those reasons, and others discussed herein, the order of the district court should be affirmed.

March 15, 2019

Respectfully submitted,

s/Jeremy B. Sporn
Federal Defenders of Eastern
Washington and Idaho
306 E. Chestnut Avenue
Yakima, Washington 98901
(509) 248-8920
jeremy_sporn@fd.org
Attorney for Appellee

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

## Form 17. Statement of Related Cases Pursuant to Circuit Rule 28-2.6

*Instructions for this form: http://www.ca9.uscourts.gov/forms/form17instructions.pdf*

**9th Cir. Case Number(s)**  | 18-30163

The undersigned attorney or self-represented party states the following:

(•) I am unaware of any related cases currently pending in this court.

( ) I am unaware of any related cases currently pending in this court other than the case(s) identified in the initial brief(s) filed by the other party or parties.

( ) I am aware of one or more related cases currently pending in this court. The case number and name of each related case and its relationship to this case are:

**Signature** | s/Jeremy B. Sporn          **Date** | Mar 15, 2019

*(use "s/[typed name]" to sign electronically-filed documents)*

*Feedback or questions about this form? Email us at forms@ca9.uscourts.gov*

## CERTIFICATE OF SERVICE

I, hereby certify that on March 15, 2019, I electronically filed the

foregoing with the Clerk of Court for the United States Court of Appeals

for the Ninth Circuit by using the appellate NextGen CM/ECF system.

I certify that all participants in the case are registered NextGen

CM/ECF users and that service will be accomplished by the appellate

NextGen CM/ECF system to:

David M. Lieberman

Meghan McCalla

/s/ Jeremy B. Sporn

Jeremy B. Sporn

# UNITED STATES COURT OF APPEALS
## FOR THE NINTH CIRCUIT
### Form 8. Certificate of Compliance for Briefs

*Instructions for this form:* http://www.ca9.uscourts.gov/forms/form08instructions.pdf

**9th Cir. Case Number(s)**  | 18-30163

I am the attorney or self-represented party.

**This brief contains** | 6,926 | **words**, excluding the items exempted

by Fed. R. App. P. 32(f). The brief's type size and typeface comply with Fed. R.

App. P. 32(a)(5) and (6).

I certify that this brief *(select only one)*:

◉ complies with the word limit of Cir. R. 32-1.

○ is a **cross-appeal** brief and complies with the word limit of Cir. R. 28.1-1.

○ is an **amicus** brief and complies with the word limit of Fed. R. App. P. 29(a)(5), Cir. R. 29-2(c)(2), or Cir. R. 29-2(c)(3).

○ is for a **death penalty** case and complies with the word limit of Cir. R. 32-4.

○ complies with the longer length limit permitted by Cir. R. 32-2(b) because *(select only one):*

    ○ it is a joint brief submitted by separately represented parties;

    ○ a party or parties are filing a single brief in response to multiple briefs; or

    ○ a party or parties are filing a single brief in response to a longer joint brief.

○ complies with the length limit designated by court order dated [          ].

○ is accompanied by a motion to file a longer brief pursuant to Cir. R. 32-2(a).

**Signature** | s/Jeremy B. Sporn | **Date** | Mar 15, 2019

*(use "s/[typed name]" to sign electronically-filed documents)*

*Feedback or questions about this form? Email us at forms@ca9.uscourts.gov*

**Form 8** | *Rev. 12/01/2018*