No. 18-30163

# In the United States Court of Appeals for the Ninth Circuit

———————

UNITED STATES OF AMERICA,
Plaintiff-Appellant

v.

JASON WILLIAM CATHCART,
Defendant-Appellee

———————

On Appeal from the United States District Court
for the Eastern District of Washington
No. 1:16-cr-2044-SAB

———————

**REPLY BRIEF OF THE UNITED STATES
[REDACTED]**

———————

JOSEPH H. HARRINGTON
United States Attorney

IAN L. GARRIQUES
MEGHAN M. MCCALLA
Assistant United States Attorneys
Eastern District of Washington

BRIAN A. BENCZKOWSKI
Assistant Attorney General

MATTHEW A. MINER
Deputy Assistant Attorney General

DAVID M. LIEBERMAN
Attorney
Criminal Division, Appellate Section
U.S. Department of Justice
950 Pennsylvania Ave., N.W.
Washington, DC 20530
(202) 262-6805
david.lieberman@usdoj.gov

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ........................................................................ ii

ARGUMENT ........................................................................................... 1

I.    The warrant articulated probable cause that child pornography would be found on Cathcart's home computer devices ........................................ 2

    A.    The warrant affidavit established that Cathcart harbored a sexual attraction to minor children ........................................................ 3

    B.    The warrant conveys a reasonable inference that Cathcart had viewed child pornography ............................................................ 4

    C.    The warrant supplied ample foundation for the state-court judge's finding that Cathcart's computer devices likely contained child pornography .................................................................................. 6

    D.    The warrant's other facts do not dissipate this inference ............... 9

    E.    None of Cathcart's authorities undermine the state-court judge's probable cause finding ............................................................. 12

II.    In any event, the good-faith doctrine precludes suppression because the warrant affidavit does not resemble the deficient *Dougherty* affidavit .... 15

CONCLUSION ....................................................................................... 19

CERTIFICATE OF COMPLIANCE ......................................................... 20

CERTIFICATE OF SERVICE ................................................................. 21

i

# TABLE OF AUTHORITIES

## Cases

*District of Columbia v. Wesby*, 138 S. Ct. 577 (2018) ...................................2, 5, 8

*Dougherty v. City of Covina*, 654 F.3d 892 (9th Cir. 2011) .........................passim

*Franks v. Delaware*, 438 U.S. 154 (1978) ...................................................... 11

*Illinois v. Gates,* 462 U.S. 213 (1983) .........................................................2, 11

*Maryland v. Pringle*, 540 U.S. 366 (2003) ................................................... 1, 2

*New York v. Ferber*, 458 U.S. 747 (1982) ...................................................... 19

*Paroline v. United States*, 572 U.S. 434 (2014) ............................................. 19

*United States v. Chavez-Miranda*, 306 F.3d 973 (9th Cir. 2002) .........................7

*United States v. Doyle*, 650 F.3d 460 (4th Cir. 2011) ...................................... 14

*United States v. Falso*, 544 F.3d 110 (2d Cir. 2008).............................. 15, 17, 18

*United States v. Hodson*, 543 F.3d 286 (6th Cir. 2008)................................... 13

*United States v. Kastis*, 2018 WL 4183267 (E.D. Cal. Aug. 30, 2018).............. 13

*United States v. Leon*, 468 U.S. 897 (1984) ................................................... 15

*United States v. Needham*, 718 F.3d 1190 (9th Cir. 2013) .........................passim

*United States v. Perkins*, 850 F.3d 1109 (9th Cir. 2017) ................................. 13

*United States v. Pippin*, 2017 WL 1737666 (W.D. Wash. May 2, 2017).......... 12

*United States v. Pippin*, 2017 WL 2806805 (W.D. Wash. June 29, 2017)......... 12

*United States v. Schesso*, 730 F.3d 1040 (9th Cir. 2013) ..................................... 6

*United States v. Weber*, 923 F.2d 1338 (9th Cir. 1990) ............................. 14, 15

*Virgin Islands v. John*, 654 F.3d 412 (3d Cir. 2011) ........................................ 13

# ARGUMENT

This Court's precedents establish that Cathcart's molestation crime, "alone, d[id] not establish probable cause to search" his home computers "for child pornography." *United States v. Needham*, 718 F.3d 1190, 1195 (9th Cir. 2013). But that rule does not resolve the dispute at bar. The warrant affidavit supporting this search cataloged additional facts evidencing child-pornography possession.

Cathcart dismisses those other facts as non-incriminating, but commits two critical errors. First, Cathcart's probable-cause analysis assigns no weight at all to his molestation offense. While an act of molestation may not itself establish probable cause to search a suspect's belongings for child pornography, this Court's decisions did not require the state-court judge who issued the warrant to ignore that conduct when evaluating the full evidentiary picture. Second, Cathcart dismisses the non-molestation facts recounted in the warrant-affidavit as individually innocuous and innocent. But those facts—when considered in their totality and alongside the molestation offense—support the state-court judge's "entirely reasonable inference" that Cathcart's home computer devices contained child pornography. *Maryland v. Pringle*, 540 U.S. 366, 372 (2003).

1

Probable cause supported the search here, and the district court's contrary holding should be reversed. At a minimum, the additional non-molestation facts alleged in the warrant affidavit establish that law enforcement's reliance on the warrant was objectively reasonable and, therefore, suppression was unwarranted under the good-faith exception to the exclusionary rule.

## I. The warrant articulated probable cause that child pornography would be found on Cathcart's home computer devices.

Cathcart begins (Br. 7-10) by extensively parsing the probable-cause standard. But that well-established standard does not demand such extended discussion; it "requires only a probability or substantial chance of criminal activity,"[1] *Illinois v. Gates*, 462 U.S. 213, 243 n.13 (1983), based on "common-sense conclusions about human behavior," *id*. at 231 (citation omitted); *accord Pringle*, 540 U.S. at 371 ("a reasonable ground for belief") (citation omitted). The probable-cause inquiry "consider[s] 'the whole picture,'" including circumstances "susceptible of innocent explanation." *District of Columbia v. Wesby*, 138 S. Ct. 577, 588 (2018) (citations omitted). As the Supreme Court has explained, "noncriminal acts" may carry "[a] degree of suspicion" that forms "the basis for a showing of probable cause." *Gates*, 462 U.S. at 243 n.13.

---

[1] A warrant need show only "a fair probability that contraband or evidence of a crime will be found in a particular place," *Gates*, 462 U.S. at 238, not a specific inference that "Cathcart committed a child pornography offense" (Br.7).

2

Turning to this case, the facts outlined in the warrant affidavit support the state-court judge's finding that Cathcart's home computer devices likely contained child pornography. Cathcart's effort to rebut that ruling lacks merit.

### A. The warrant affidavit established that Cathcart harbored a sexual attraction to minor children.

The warrant affidavit set forth the undisputed fact that Cathcart molested

███████████████████████. ER 14. Cathcart confessed that he had

████████████████████████, which a medical exam confirmed. *Ibid.* Cathcart admitted that "it's not the first incident" and he had "touched [the victim] inappropriately before." *Ibid.* Upon further inquiry, Cathcart stated he had also molested the victim "[s]ometime within the last week" as well as "some occurrences prior to that." *Ibid.*

This Court has previously held that incidents of child molestation do not, without more, supply probable cause to search the perpetrator's home for evidence of child pornography. *See Dougherty v. City of Covina*, 654 F.3d 892, 898-899 (9th Cir. 2011); *accord Needham*, 718 F.3d at 1195 (rejecting "the bare inference that those who molest children are likely to possess child pornography"). Those decisions do not, however, preclude law enforcement and the reviewing magistrate from considering the molestation as a relevant factor in the probable-cause inquiry. For instance, as this Court noted in

3

*Dougherty*, "indications of pedophilia" carry currency in the probable-cause analysis. 654 F.3d at 899.

Moreover, the molestation in this case was qualitatively different than the conduct in *Dougherty* and *Needham*. Whereas those cases involved fondling, the warrant affidavit here documented ███████████████ and set forth Cathcart's admissions that he had previously engaged in such conduct on multiple occasions over a period of time. Those facts reveal Cathcart's sexual attraction to minor children. Thus, even if not sufficient alone, Cathcart's sexual exploitation of a minor deserves weight in the probable-cause analysis.

## B. The warrant conveys a reasonable inference that Cathcart had viewed child pornography.

The warrant affidavit recounted law enforcement's consensual visit to Cathcart's home. There, the officer asked Amanda (Cathcart's wife) "if there was a specific room or place in the house where her husband would use a computer in private." ER 16. Amanda responded that "[Cathcart] often took his laptop computer with him to the bathroom." *Ibid.*

Such conduct supports a fair inference that Cathcart viewed pornography on the laptop while in the bathroom. That inference also tracks Cathcart's interview with law enforcement. He initially denied viewing pornography, SER 72, but when pressed, stated, "I've seen it[,] I mean I can't help it … but …

4

I don't actively try to view it," ER 14. Officers viewed Cathcart's response with suspicion, noting it "[wa]s not an absolute denial." *Ibid.*; *see Wesby*, 138 S. Ct. at 587 ("[V]ague and implausible responses" invited inference that "[partygoers] were lying.").

For his part, Cathcart admits that this pornography inference is reasonable. But he assigns it no weight in the probable-cause calculus because "even accounting for the totality of circumstances, it does not suggest the presence of child pornography … It would be just as likely that Mr. Cathcart looked at adult pornography in the bathroom." Br. 17 n.7.[2]

But the allegations in the warrant affidavit supported the reasonable inference that Cathcart had viewed *child* pornography in the bathroom. After all, as discussed, the affidavit established that Cathcart harbors a sexual attraction to minor children. And once the record supports the inference that Cathcart consumed pornography in the bathroom, the state-court judge was

---

[2] The response brief alternatively speculates (Br. 17 n.7) "that Mr. Cathcart … simply did not want to leave a work device accessible to his children while he was in the bathroom." The state-court judge was under no obligation to credit this (non-intuitive) interpretation of Cathcart's habit of bringing his laptop into the bathroom—particularly because his home office had a desk, desk drawers and five-drawer file cabinet. ER 16. Those areas, or even a shelf, would have provided Cathcart with obvious places to store a laptop away from his young children during a restroom trip.

entitled to make the reasonable inference that the pornography reflected Cathcart's sexual preferences—namely, that it depicted children.

### C. The warrant supplied ample foundation for the state-court judge's finding that Cathcart's computer devices likely contained child pornography.

The last inferential step in this probable-cause analysis is short and straightforward. The warrant provided the state-court judge with ample basis to infer that child pornography would likely be found on the computer devices in Cathcart's home.

*First*, as recounted above, the facts support the inference that Cathcart had viewed child pornography on a laptop in his home bathroom. That circumstance alone justified the state judge's decision to approve a search of the computer devices in Cathcart's home. *See United States v. Schesso*, 730 F.3d 1040, 1046 (9th Cir. 2013) ("The government had no way of knowing which or how many illicit files there might be or where they might be stored.").

*Second*, with Amanda's consent, law enforcement toured her and Cathcart's house, entered the home office, and searched a file cabinet. ER 16. There, the officer located multiple 120-gigabyte hard drives—labeled "Photos A," "Photos B," "d.c0," and "d.c1." *Ibid*. Amanda had no familiarity with them; she reported "they don't take that many photographs." *Ibid*. The photo-laden hard drives also had no obvious connection to Cathcart's work as an IT

6

service contractor.  Finally, Officer Brumley (the warrant affiant) concluded that the cryptic labels on the hard drives were inconsistent with "the existence of non-contraband."  ER 22.  Officer Brumley explained that such titles would have allowed "[Cathcart] to remember what was stored on them without having to connect them to a computer," while "still minimizing risk of inadvertent discovery" by others.  *Ibid*.  These conclusions are consistent with the commonsense observation that family photos are unlikely to be labeled "Photos A" and "Photos B."  Officer Brumley's detailed conclusions therefore permitted the state-court judge to reasonably infer that Cathcart had stored child pornography on his home devices.

Cathcart retorts (Br. 16) that these explanations "more closely resemble[] cartoon villainy than the reality of how child pornography is concealed or stored."  Cathcart offers no support for this bald contention.  In any event, the state-court judge was free to rely on Officer Brumley's 25-years of experience (ER 21) investigating these crimes when evaluating the significance of the hard drives.  *See United States v. Chavez-Miranda*, 306 F.3d 973, 978 (9th Cir. 2002) ("[I]ssuing judges may rely on the training and experience of affiant police officers.").

*Third*, while under investigation, Cathcart repeatedly contacted Amanda in an effort to obtain all the home's computer devices, ER 15, 17-18, and asked

7

Amanda to turn on the home computer tower so he could access it remotely, ER 16. These requests support the inference that Cathcart was trying to access and delete incriminating files on those devices, particularly because he had just denied viewing child pornography to law enforcement. ER 14; SER 80-81.

Cathcart states (Br. 14) that he needed to access his files in order to resume his work as an IT service contractor. That explanation might carry weight if Cathcart had only sought his work-related devices, but "Cathcart also requested that his wife return to him a number of additional computers and electronic storage devices over and above his iPad and his laptop, which he indicated were his 'work computers.'" ER 22. Cathcart additionally sought remote access to the family's home computer—a tower connected to a drum set, speakers, and game controllers, ER 16—which also was "not his work computer," ER 21. Of course, Cathcart can postulate (Br. 14-15 n.5) innocent reasons for seeking access to these computer devices during the criminal investigation. But the probable-cause inquire does not require the reviewing magistrate "to rule out a suspect's innocent explanation." *Wesby*, 138 S. Ct. at 588. The fact that Cathcart repeatedly and insistently sought access to all computer devices a short time after being questioned about child pornography supports an inference that those devices contained contraband.

8

Considered in its totality and evaluated in a commonsense manner, the warrant affidavit in this case was not a barebones, *Dougherty*-type affidavit that merely recited the suspect's act of molesting a child. To the contrary, the warrant affidavit—on the whole—demonstrated a fair probability that Cathcart had viewed child pornography at his home and that such files would be found on his home computer devices. The search warrant was therefore valid, and the district court's suppression order should be reversed.

## D. The warrant's other facts do not dissipate this inference.

Cathcart parses various other facts conveyed in the warrant affidavit. None, however, detracts from the two inferences discussed above: that Cathcart viewed child pornography in his home, and that evidence of such material would likely be found on Cathcart's home computer devices.

1. Cathcart notes (Br. 11-12) his statements to police denying that he ever viewed child pornography. The government has not assigned incriminating weight to those denials. Of course, neither law enforcement nor the state-court judge was required to credit Cathcart's protestations of innocence when conducting the probable-cause analysis.

2. Cathcart argues (Br. 12-13) that the government improperly assigns incriminating weight to an exchange—relayed by the warrant affidavit— between him and Amanda. █████████████████████████

9

████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

████████████ Amanda "asked him if there was anything on their computers. His response was 'There shouldn't be.'" ER 17.

Amanda's question was clear; she wanted to know whether their computers contained depictions of the molestation incidents that Cathcart had just admitted. Cathcart's response—"There shouldn't be"—hardly conveys a firm denial. Cathcart even admits (Br. 13) that his language was "cautious" and "somewhat qualified." This exchange accordingly supports an inference that the computers stored molestation images at some point. But even if this exchange is given no weight, the warrant affidavit establishes probable cause for the reasons stated above.

3. Cathcart states (Br. 13) that Amanda's "apparent concerns … about child pornography … cannot serve as the basis for probable cause." *See* ER 15 (affidavit: "Mrs. Cathcart said that she is concerned that these devices may contain inappropriate content such as child pornography."). The government agrees that Amanda's personal suspicions carry no independent weight in this probable-cause inquiry. The warrant affidavit relayed Amanda's suspicions

10

simply to provide context for Amanda's decision to consent to a search of her and Cathcart's home.  ER 15-16.[3]

4. Cathcart discounts (Br. 14) the fact that he committed the molestation offense with his iPhone in arm's reach, stating that "[he] (like almost everyone else) kept a smartphone close by."  That comment ignores the Supreme Court's admonition that "[i]nnocent behavior frequently will provide the basis for a showing of probable cause."  *Gates*, 462 U.S. at 243 n.13.  The iPhone's proximity, when considered alongside the other circumstances, suggest Cathcart's interest in recording the molestation.  In any event, the warrant affidavit supplies ample foundation for probable cause even without this fact.

5. Cathcart misunderstands (Br. 16) the reason for the warrant affidavit's references to his computer aptitude.  The affidavit noted that law enforcement had conducted a preliminary review "without forensic equipment" of the

---

[3] Cathcart separately faults (Br. 12 n.4) law enforcement for failing to include in the warrant affidavit Amanda's statements on March 31, 2016—███ ████████████████████████████—that, as of that time, she did not suspect Cathcart of viewing child pornography.  SER 107-108.  This charge is irrelevant and baseless.  First, it lacks relevance because Cathcart has not claimed, under *Franks v. Delaware*, 438 U.S. 154 (1978), that law enforcement violated the Fourth Amendment by intentionally or recklessly omitting material information from the warrant affidavit.  Second, the government did not contend that probable cause existed as of the date Amanda first discovered Cathcart molesting ████████.  Rather, as the warrant affidavit explained, Amanda developed suspicions regarding Cathcart's pornography consumption on April 5, 2016—after Cathcart had repeatedly requested Amanda's assistance in accessing various computers and external media devices at the house.  ER 15.

11

computer devices seized from Cathcart's home and found no child pornography. ER 16. Law enforcement also consulted a known child-pornography database to discern possible links to Cathcart. "The query came back negative." ER 18. The warrant affidavit referenced Cathcart's technical capabilities (ER 22-23) to explain why these preliminary examinations did not vitiate probable cause, and not to suggest that Cathcart possessed child pornography on his computers merely because he was technologically sophisticated.

### E. None of Cathcart's authorities undermine the state-court judge's probable cause finding.

Cathcart cites (Br. 21-22) a number of decisions in which courts suppressed child-pornography due to a defective probable-cause showing in the search warrant. None resemble the facts here.[4]

Most of Cathcart's decisions involve a warrant resembling the one in *Dougherty*. The affidavits in those cases alleged molestation or sexual abuse but did not link the suspect to child pornography and, thus, did not support a search of his home or computers for such contraband. *See Needham*, 718 F.3d at 1191-1192 (molestation by suspect in mall restroom, plus past juvenile convictions for

---

[4] Cathcart's list (Br. 22) includes *United States v. Pippin*, 2017 WL 1737666 (W.D. Wash. May 2, 2017), but that decision offers no support because the district court subsequently granted the government's reconsideration motion and denied the defendant's suppression motion. *See United States v. Pippin*, 2017 WL 2806805 (W.D. Wash. June 29, 2017).

sexual abuse and possessing obscene material); *Virgin Islands v. John*, 654 F.3d 412, 414 (3d Cir. 2011) (sexual assaults by teacher at school, plus report that teacher carried notebooks containing inappropriate written comments about students); *United States v. Hodson*, 543 F.3d 286, 287 (6th Cir. 2008) (internet chatroom conversation where suspect admitted molesting young boys); *United States v. Kastis*, 2018 WL 4183267, at *11 (E.D. Cal. Aug. 30, 2018) (suspect kissed Minor #1 in his apartment, grabbed Minor #2's butt and chest, and once photographed Minor #2 in a bathing suit). The preceding warrant affidavits do not resemble the one here. This affidavit cataloged an assortment of additional facts beyond the molestation crime linking Cathcart to child pornography.

In other cases, courts found the asserted link to child pornography too tenuous. In *United States v. Perkins*, 850 F.3d 1109, 1121-1122 (9th Cir. 2017), this Court stated that the two photographs of children on the defendant's person were not pornographic and, accordingly, did not establish a fair probability that child pornography would be found at his home.[5] The Court explained that "[t]he image appears to be a selfie, taken by the subject of herself, who is holding the camera at an angle slightly above her head and shooting downwards"; it "lack[ed] any traits that would make it sexually suggestive." *Id*. at 1122.

_____

[5] The Court in *Perkins* also placed little stock in the defendant's decades-old convictions for incest and molestation. 850 F.3d at 1120.

Similarly, in *United States v. Doyle*, 650 F.3d 460 (4th Cir. 2011), multiple child-victims reported that the defendant had sexually assaulted them at his house. An uncle also stated that his nephew (one of the victims) recalled the defendant displaying photographs of nude children. *Id*. at 464. The Fourth Circuit concluded that the latter fact did not support a probable-cause finding that child pornography would be found at the defendant's home because the affidavit did not state whether the photographs were pornographic or identify the date on which the defendant displayed them, giving rise to staleness concerns. *Id*. at 473-475. No such concerns are present here. As detailed above, the facts in the warrant affidavit provided a sufficient foundation to infer that Cathcart regularly viewed child pornography and that the material was currently stored on his home computer devices.

Finally, in *United States v. Weber*, 923 F.2d 1338, 1340 (9th Cir. 1990), customs agents intercepted an advertisement for child pornography addressed to the defendant's home. Law enforcement subsequently mailed a fake child-pornography advertisement to that address and the defendant ordered four pictures. *Ibid*. This Court held that these facts, which demonstrated the defendant's interest in child pornography, did not support probable cause to believe he had collected child pornography at his home. *Id*. at 1345. The Court further stated that "there was not a whit of evidence in the affidavit indicating

14

that [the defendant] was a 'child molester.'" *Ibid*. In comparison, the warrant affidavit here articulates facts supporting the two inferences missing from *Weber*: Cathcart had molested ███████████, and Cathcart had viewed child pornography in his home.[6]

## II. In any event, the good-faith doctrine precludes suppression because the warrant affidavit does not resemble the deficient *Dougherty* affidavit.

Even if the search warrant lacked probable cause, the good-faith doctrine precludes suppression unless law enforcement's reliance on the warrant was objectively unreasonable, such as when the supporting affidavit was "bare bones," *United States v. Leon*, 468 U.S. 897, 915 (1984)—that is, "so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable," *id.* at 923 (citation omitted).

Cathcart insists (Br. 24) that this Court's decisions in *Needham* and *Dougherty* preclude the good-faith doctrine's application here. He is wrong.

---

[6] Cathcart also cites *United States v. Falso*, 544 F.3d 110, 114 (2d Cir. 2008) (Sotomayor, J.), but that case is inapposite. In *Falso*, the FBI learned that the defendant had visited an Internet website associated with child pornography. But the FBI lacked evidence that the defendant paid the website's subscription fee, accessed the website's members-only areas, or otherwise accessed pornographic images from the website. *Id.* at 121. The Second Circuit concluded that this record failed to establish probable cause that the defendant had actually viewed child pornography. *Ibid*. In this case, by contrast, the warrant affidavit supported a fair inference that Cathcart had viewed child pornography in his home bathroom.

15

*Needham* and *Dougherty* addressed warrant affidavits that conveyed only two facts: (1) information that the suspect had fondled a child; and (2) the law enforcement affiant's belief, based on training and experience, that "subjects involved in this type of criminal behavior have in their possession child pornography." *Dougherty*, 654 F.3d at 896; *see also Needham*, 718 F.3d at 1192. Those decisions announced a clear rule: the inference that "those who molest children are likely to possess child pornography … , alone, does not establish probable cause to search a suspected child molester's home for child pornography." *Needham*, 718 F.3d at 1195. Had the warrant affidavit in this case conveyed only those two categories of information—Cathcart's molestation crimes and the affiant's belief that molesters typically possess child pornography—the good-faith doctrine would not apply.

But the warrant affidavit in this case cataloged additional, significant evidence supporting a connection to child pornography. The severity and frequency of Cathcart's molestation crimes were "indications of pedophilia" that were not present in *Dougherty*, 654 F.3d at 899. And as compared to *Needham* and *Dougherty*, the warrant affidavit here additionally supported the inference that Cathcart consumed child pornography in his home bathroom, stored such files on hard drives in his home office, and tried to access those files after his arrest.

16

Cathcart criticizes (Br. 7) what he describes as "the strength of the non-molestation evidence." The government disputes his characterization, but the need to even debate the incriminating nature of those facts shows that the affidavit in this case does not resemble the skeletal warrants addressed in *Needham* and *Dougherty*. *See, e.g.*, *Dougherty*, 654 F.3d at 899 ("[T]he affidavit does not even verify that Dougherty owned a computer or the other targets of the search or had internet service or another means of receiving child pornography at his home."). Those decisions accordingly do not demonstrate an absence of good faith by law enforcement here.

The decision in *Falso*, which Cathcart approvingly cites (Br. 22), echoes this point. There, the Second Circuit held that the defendant's act of visiting a suspicious website did not support a probable-cause inference that he had viewed child pornography. But the court nevertheless refused to suppress the evidence obtained in the search. While "there may have been an innocent explanation for the presence of Falso's e-mail address on the … website," the Second Circuit concluded, that explanation "d[id] not undermine the officers' good-faith reliance on the warrant." 544 F.3d at 128.

The same conclusion holds here. Cathcart minimizes the non-molestation information in the warrant affidavit as addressing only innocent and innocuous behavior. The government disagrees; this information supports the state judge's

probable-cause finding that child pornography would likely be found on Cathcart's home computer devices. But even if this Court concludes that the molestation and non-molestation allegations in the warrant affidavit, considered in their totality, do not establish probable cause, "the error in this case … was committed by the [state trial judge] in issuing the warrant, not by the officers who executed it." *Falso*, 544 F.3d at 129. As the Second Circuit reasoned in *Falso*, good faith precludes suppression.

* * *

Cathcart closes (Br. 27) with the contention that his state conviction for ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮—which resulted in an indeterminate life sentence with the possibility for release after 10 years—adequately addressed "[t]he great evil of his misconduct." According to Cathcart, the child pornography on his devices "is almost incidental." He is incorrect. To start with, Cathcart produced child pornography that depicted ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ ▮▮▮▮▮▮▮. Because the state court suppressed evidence from Cathcart's computers, he received no punishment in state court for the crimes involving ▮▮ ▮▮▮, which were only discovered as a result of the search in this case. ER 100. Moreover, Cathcart ignores the specific harm he caused by creating and possessing the child pornography found on his computers, which depicted ▮▮ ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮, but also additional child victims. *Ibid*. As the

18

Supreme Court has explained, child pornography not only harms children because its production "involves child abuse," but also "because child pornography is 'a permanent record' of the depicted child's abuse, and 'the harm to the child is exacerbated by [its] circulation.'" *Paroline v. United States*, 572 U.S. 434, 440 (2014) (quoting *New York v. Ferber*, 458 U.S. 747, 759 (1982)).

In any event, considerations regarding the adequacy of Cathcart's state sentence and the United States Attorney's decision to prosecute him on federal charges do not bear on the constitutionality of the search or application of the good-faith doctrine.

## CONCLUSION

The Court should reverse the district court's suppression order.

Respectfully submitted,

JOSEPH H. HARRINGTON
United States Attorney

IAN L. GARRIQUES
MEGHAN M. MCCALLA
Assistant United States Attorneys
Eastern District of Washington

BRIAN A. BENCZKOWSKI
Assistant Attorney General

MATTHEW A. MINER
Deputy Assistant Attorney General

/s/David M. Lieberman
DAVID M. LIEBERMAN
Attorney
Criminal Division, Appellate Section
U.S. Department of Justice
950 Pennsylvania Ave., N.W.
Washington, DC 20530
(202) 262-6805
david.lieberman@usdoj.gov

19

## CERTIFICATE OF COMPLIANCE

1. This brief complies with the length limits permitted by Ninth Circuit Rule 32-1 because the brief contains 4,175 words, excluding the portions exempted by Fed. R. App. P. 32(f), if applicable.

2. This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because this brief has been prepared on a proportionally spaced typeface using Microsoft Word 2013 in 14-point Calisto MT font.

/s/David M. Lieberman